**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CAPITAL INVESTMENTS | ) | |
| GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-115-GMS-SRF |
| | ) | |
| VICTORIA KORBAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I.     INTRODUCTION**

Presently before the court in this diversity action is the motion to dismiss of defendant

Victoria Korban ("Ms. Korban"). (D.I. 54) Ms. Korban moves to dismiss this matter for lack of

personal jurisdiction under Fed. R. Civ. P. 12(b)(2), insufficient service of process under Fed. R.

Civ. P. 12(b)(5), failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ.

P. 12(b)(6), and failure to plead fraud with the particularity required by Fed. R. Civ. P. 9(b). (D.I.

54) Plaintiff Capital Investments Group, Inc. ("CIG") opposes Ms. Korban's motion. (D.I. 56)

For the reasons which follow, I recommend that the court GRANT Ms. Korban's motion to

dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

**II.     BACKGROUND**

**A.  Procedural History**

CIG filed this action on February 12, 2010, seeking injunctive relief, damages, and a

declaratory judgment under 28 U.S.C. § 2201, against nineteen named foreign defendants,

1

including Ms. Korban (together, "Defendants").[1] (D.I. 1) CIG alleges theft and conversion of its real property and assets by the Defendants. (*Id.*; *See also* D.I. 10)

On December 14, 2011, CIG allegedly served Ms. Korban with process in her country of residence, Israel. (D.I. 27) On January 3, 2012, this court granted CIG's Amended Motion for a Preliminary Injunction (D.I. 23) and ordered the Defendants, including Ms. Korban, to respond to the complaint. (D.I. 26) The parties filed two stipulations concerning the filing of an amended complaint and revised briefing schedules. (D.I. 47; D.I. 53) On May 25, 2012, CIG filed an Amended and Supplemental Complaint. (D.I. 48) On July 23, 2012, Ms. Korban filed the pending motion, requesting dismissal for lack of personal jurisdiction, insufficient service of process, failure to state a claim upon which relief can be granted, and failure to plead fraud with particularity. (D.I. 54)

### B. Facts

#### i. CIG's Substantive Claims

CIG is a Wyoming corporation with its principal place of business in Wyoming. (D.I. 56 at 4) CIG owned real property in the Ukraine and held interests in various Ukrainian companies. (*Id.*) According to CIG, defendant Gennady Korban is the heart of a conspiracy (the "Korban Conspiracy") that utilized a forged power of attorney and sham legal proceedings in the Ukraine to strip CIG of its real property and interests in other companies.[2] (*Id.*)

CIG alleges that Ms. Korban, Gennady Korban's sister, participated in the Korban Conspiracy, with knowledge of its purpose, by forming and/or operating companies that assisted

---

[1] Of the nineteen Defendants, fifteen are allegedly domiciled in the Ukraine, two are in Cyprus, one is in the U.K., and Ms. Korban is in Israel. (D.I. 48 at 1-4)

[2] CIG does not assert that any of its real property is located in Delaware. Further, CIG does not assert that any of its interests in other companies have any connection to Delaware as a place of incorporation, principal place of business, or location of corporate assets. (*See generally* D.I. 48; D.I. 56 at 4)

in converting CIG's assets and/or their proceeds. (*Id.* at 4-5)

CIG claims that the "lynchpin" for the conversion of its property and assets was a forged power of attorney on behalf of CIG's president, Gerald Pitts, in favor of defendant Oleg Vitaliyovich Eryomenko. (*Id.* at 5) The purported power of attorney allegedly contained a forged signature of Gerald Pitts, a forged notarization by a notary public in the State of Delaware, and a forged apostille seal of the Delaware Secretary of State certifying the document's authenticity. (*Id.*)

## ii.   Service of Process

In early 2010, CIG hired a private investigator to locate Ms. Korban and serve her with process. (*Id.* at 8) CIG asserts that in March 2010, its private investigator served Ms. Korban. (*Id.*) However, Ms. Korban claims that the address provided by the investigator was incorrect, and she never received any documents in March 2010. (D.I. 55 at 10) In March 2011, CIG filed an undated certificate of service indicating that Ms. Korban was served by regular mail with a copy of CIG's amended motion for a preliminary injunction. (D.I. 24) According to Ms. Korban, however, the certificate of service lists the incorrect apartment number for her address. (D.I. 55 at 10-11)

In December 2011, CIG executed a request with the Israeli Central Authority to effect service of process. (D.I. 56 at 8) The Israeli Central Authority returned the request, indicating that it served Ms. Korban on December 14, 2011. (*Id.* at 8-9; D.I. 27 at 1) Ms. Korban disputes that CIG actually served her with process. According to Ms. Korban, the Israeli Central Authority served Reoven Lahav, a security guard that works in Ms. Korban's apartment building. (D.I. 55 at 9) Ms. Korban claims she is unfamiliar with Reoven Lahav, and never authorized him, or any other person, to accept legal documents on her behalf. (*Id.* at 8-9)

Ms. Korban notes that, with regard to all documents CIG purportedly sent her, CIG is silent as to whether it attempted to provide the documents in a language that she could understand. (*Id.* at 11) Ms. Korban speaks no English, only Russian and some Hebrew. (*Id.*)

## III.   LEGAL STANDARDS

### A. Personal Jurisdiction[3]

Pursuant to Rule 12(b)(2), the court must dismiss a case where it lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When reviewing a Rule 12(b)(2) motion to dismiss, the court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. *Traynor v. Liu*, 495 F. Supp. 2d 444, 448 (D. Del. 2007). To establish personal jurisdiction, the plaintiff must set forth sufficient facts to satisfy two requirements by a preponderance of the evidence, one statutory and one constitutional. *See Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448, 453-454 (D. Del. 2009) (citing *Reach & Assocs. v. Dencer*, 269 F. Supp. 2d 497, 502 (D. Del. 2003)). With respect to the statutory requirement, the court must determine whether there is a statutory basis for jurisdiction under the forum state's long arm statute. *See Reach & Assocs.*, 269 F. Supp. 2d at 502. The constitutional basis requires the court to determine whether the exercise of jurisdiction comports with the defendant's right to due process. *See id.*; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Under the Due Process Clause, a defendant is subject to the jurisdiction of a federal court

---

[3] This Report and Recommendation addresses first the issue of personal jurisdiction. The jurisdictional inquiry may precede an examination of service of process because valid service of process necessarily requires the existence of personal jurisdiction. *See Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448, 460 (D. Del. 2009) (explaining that "the failure of the plaintiff to obtain valid process from the court *to provide it with personal jurisdiction* over the defendant in a civil case is fatal to the plaintiff's case." (emphasis added (citing *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3d Cir. 1996)))).

only when the defendant's conduct is such that he should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Personal jurisdiction over a nonresident defendant is proper when either specific or general jurisdiction exists. *See Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 211 (3d Cir. 1984). "Specific personal jurisdiction exists when the defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those activities.'" *BP Chems. Ltd. v. Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). General jurisdiction exists when the defendant's contacts with the forum are "continuous and systematic," whether or not the contacts relate to the litigation. *Id.* (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984)).

Where the defendant raises a jurisdictional defense, the plaintiff bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts exist between the defendant and the forum to support jurisdiction. *Belden Techs.*, 626 F. Supp. 2d at 453 (citing *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). In order to meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984).

### B. Service of Process

A defendant may file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) when a plaintiff fails to properly serve him or her with the summons and complaint. Rule 4(m) provides, "[i]f a defendant is not served within 120 days after the complaint is filed, the court -- on motion

or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time."[4] Fed. R. Civ. P. 4(m). Subsection (m), however, "does not apply to service in a foreign country under Rule 4(f) or 4(j)(1)." *Id.*

### C. Failure to State a Claim

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

Following the Supreme Court's decision in *Iqbal*, district courts have conducted a two-part analysis in determining the sufficiency of the claims. First, the court must separate the factual and legal elements of the claim, accepting the complaint's well-pleaded facts as true and disregarding the legal conclusions. *Iqbal*, 556 U.S. at 663. "While legal conclusions can provide

---

[4] Rule 4(m) also provides, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

the complaint's framework, they must be supported by factual allegations." *Id.* at 664. Second, the court must determine whether the facts alleged in the complaint state a plausible claim by conducting a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Id.* at 663-64; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### D. Conspiracy Theory of Jurisdiction

The Supreme Court of Delaware has articulated the following standard for establishing jurisdiction under the conspiracy theory of jurisdiction:

> [A] conspirator who is absent from the forum state is subject to the jurisdiction of the court, assuming he is properly served . . . , if the plaintiff can make a factual showing that: (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

*Istituto Bancario Italiano SpA v. Hunter Engineering Co.*, 449 A.2d 210, 225 (Del. 1982).[5]

### IV.   DISCUSSION

I recommend that the court grant the pending motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(2), because CIG has failed to establish personal jurisdiction over Ms. Korban. Since jurisdiction has not been established in this matter, the parties' remaining arguments concerning dismissal are moot.

---

[5] The court reasoned that a party "who has so voluntarily participated in a conspiracy with knowledge of its acts in or effects in the forum state can be said to have purposefully availed himself of the privilege of conducting activities in the forum state, thereby fairly invoking the benefits and burdens of its laws." *Istituto Bancario*, 449 A.2d at 225.

7

## A. Personal Jurisdiction Under Delaware's Long-Arm Statute

The court applies a two-part test in determining whether it has personal jurisdiction over a nonresident defendant. First, the court must decide whether Delaware's long-arm statute confers personal jurisdiction over the defendant. If it does, the court must determine whether exercise of jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment.[6] *Belden Techs.*, 626 F. Supp. 2d at 455. *See also Moore v. Little Giant Indus., Inc.*, 513 F. Supp. 1043, 1046 (D. Del. 1981), *aff'd*, 681 F.2d 807 (3d Cir. 1982). Pursuant to Delaware's long-arm statute,

> [the] court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply services or things in this State;
> (3) Causes tortious injury in the State by an act or omission in this State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
> (5) Has an interest in, uses or possesses real property in the State; or
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c).[7]

Subsections (1) and (3) confer specific jurisdiction, which "requires that the cause of action arise from the defendant's contacts with the forum state." *Belden Techs.*, 626 F. Supp. 2d

---

[6] "A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Provident Nat'l*, 819 F.2d at 436. See *also* Fed. R. Civ. P. 4(k).

[7] This court applies the Delaware long-arm statute consistent with Delaware state courts, which construe the long-arm statute as "'confer[ring] jurisdiction to the maximum extent possible under the Due Process Clause.'" *Belden Techs.*, 626 F. Supp. 2d at 455 n.3 (quoting *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480-81 (Del. 1992) (citations omitted). *See also Speakman Co. v. Harper Buffing Machine Co.*, 583 F. Supp. 273, 275 (D. Del. 1984).

at 455 (citing *Provident Nat'l Bank*, 819 F.2d at 437). In other words, there must "be a nexus between the plaintiff's cause of action and the conduct of the defendant."[8] *Hadley v. Shaffer*, 2003 WL 21960406, at *7 (D. Del. Aug. 12, 2003) (citing *Helicopteros*, 466 U.S. at 414 n.8).

Subsection (4), on the other hand, grants general jurisdiction, "which requires a greater number of contacts, but allows the exercise of personal jurisdiction even when the claim is unrelated to the forum contacts." *Belden Techs.*, 626 F. Supp. 2d at 455 (citing *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991)).

The U.S. Supreme Court's general jurisdiction opinions, although few in number, have consistently rejected a "'sprawling view of general jurisdiction.'" *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (U.S. 2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2856 (U.S. 2011)). Most recently, in *Daimler AG*, the Supreme Court declined to extend general jurisdiction over a foreign corporation on the theory of agency. The plaintiffs had argued, unsuccessfully, that a foreign corporation should be subject to jurisdiction in the forum state, for conduct committed outside of the forum state, based upon a subsidiary's sales volume in the forum state. *Id.*, 134 S. Ct. at 751-52. The subsidiary, however, was neither incorporated in the forum state, nor did it have its principal place of business there. *Id.* at 761. The Supreme Court refused to base jurisdiction on the subsidiary's services in the forum, even though such services were arguably "important" to its foreign parent corporation. *Id.* at 759.

If a jurisdictional defense is raised, "the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Provident Nat'l Bank*, 819 F.2d at 437 (citing *Gehling v. St. George's School of*

---

[8] "[P]ersonal jurisdiction can be asserted over a defendant on the basis of a single act related to the state, if the claim has its basis in the asserted transaction." *Hadley*, 2003 WL 21960406, at *7 (citations omitted).

*Medicine, Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985)). "To meet this burden, the plaintiff must establish either that the particular cause of action sued upon arose from the defendant's activities within the forum state ('specific jurisdiction') or that the defendant has 'continuous and systematic' contacts with the forum state ('general jurisdiction')." *Id.* (citing *Helicopteros*, 466 U.S. at 414; *Gehling*, 773 F.2d at 541).

In the present matter, the record reflects that Ms. Korban has no connection whatsoever to the State of Delaware.

> Ms. Korban has never resided in or traveled to Delaware. She does not own and has never owned any stock in any non-public company registered in Delaware. She is not and has never been a director, officer, or manager of a company formed in Delaware. Ms. Korban does not maintain an office in Delaware, and she has never transacted or conducted any business in Delaware, nor has she performed any work or services in Delaware. Furthermore, Ms. Korban never contracted to supply services or things in Delaware. Ms. Korban does not regularly conduct or solicit business or engage in any other persistent course of conduct in Delaware, nor does she derive substantial revenue from services or things consumed in Delaware. Moreover, Ms. Korban does not have any interest in, possess, or use any real property in Delaware, and she has never contracted to insure, or acted as a surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within Delaware.

(D.I. 55 at 7; *Id.*, Ex. A) CIG does not dispute Ms. Korban's assertions. Consequently, the sole basis upon which to assert personal jurisdiction over Ms. Korban is CIG's claim that someone in the alleged Korban Conspiracy purportedly forged a Delaware notarization and apostille seal, and used the document allegedly to facilitate various transactions outside of the State. According to CIG, this represents a single act or transaction sufficient to confer specific jurisdiction under 10 Del. C. § 3104(c)(1).[9] (D.I. 56 at 13-15)

---

[9] While CIG does not assert that § 3104(c)(3) confers jurisdiction over Ms. Korban, it should be noted that application of subsection (3) in this case is precluded because CIG does not allege that an act by Ms. Korban (or any member of the purported Korban Conspiracy) took place in Delaware. (*See* D.I. 48) This court has held that in order to establish jurisdiction under § 3104(c)(3), "'the defendant, or an agent of the defendant, must be present in Delaware when the deed is done.'" *Intel Corp. v. Silicon Storage Tech.*, 20 F. Supp. 2d 690, 698 (D. Del. 1998)

CIG's jurisdictional argument under § 3104(c)(1) is unpersuasive, as it is based not on a tangible act, but on an illusory act conveyed by a sham document. Notably, CIG does not assert that any act by Ms. Korban (or other member of the purported Korban Conspiracy), including the alleged forgeries, took place in Delaware. (*See* D.I. 48) Instead, CIG argues that "Ms. Korban should be bound, for jurisdictional purposes, by what the Forged Power of Attorney purports to be -- signed and notarized in Delaware." (D.I. 56 at 13) That result, however, is precluded by the plain language of 10 Del. C. § 3104(c)(1), which explicitly requires the occurrence of a "[t]ransact[ion] . . . *in the State* [of Delaware]." *Id.* (emphasis added). Delaware case law supports this interpretation of subsection (c)(1).

For example, in *Fischer v. Hilton*, 549 F. Supp. 389 (D. Del. 1982), the plaintiff, a Delaware resident, brought a diversity action in this court for breach of contract and tortious conduct against the defendant, an Ohio-based used vehicle dealer, in connection with the sale of an allegedly defective truck. The facts showed that the defendant was an Ohio resident who had no connection to Delaware. The contract of sale was negotiated and executed in Ohio, and the truck was delivered to the plaintiff in Ohio. While the plaintiff was in Delaware, he had at least two conversations with the defendant via telephone concerning the financing of the truck.[10] Several days after taking possession, the plaintiff began to experience problems with the truck, and he ultimately filed suit. The defendant moved to dismiss the action for lack of personal jurisdiction. *Id.* at 390.

---

(citation omitted)). Similarly, 10 Del. C. § 3104(c)(3) requires that the resulting tortious injury in addition to the alleged improper act occur in Delaware. *Mimm v. Vanguard Dealer Servs., LLC*, 2012 WL 4963315, at *3 (D. Del. Oct. 16, 2012).

[10] Only one telephone call was placed by the defendant to Delaware. *Fischer*, 549 F. Supp. at 390.

In granting the defendant's motion to dismiss, this court held that § 3104(c)(1)

> is applicable if the defendant "transacts any business or performs any character of work or service in the State." . . . *[T]he language of this subsection requires some action by the defendant occurring in the State of Delaware.* Other than the two phone calls involving financing arrangements, plaintiff points to no activity that demonstrates [the defendant] transacted any business within the State of Delaware. Although isolated phone calls arguably may be related to the constitutional due process question, it is held on these facts that such phone calls do not constitute a transacting of business within the State of Delaware for purposes of subsection (c)(1).

*Fischer*, 549 F. Supp. at 391 (emphasis added) (citations omitted).[11]

In *United States v. Consolidated Rail Corp.*, 674 F. Supp. 138 (D. Del. 1987), a number of defendants sought indemnification from third-party defendant The Globe Newspaper Company ("Globe") for liability in connection with an action by the United States of America concerning the clean-up in Delaware of improperly disposed hazardous waste. *Id.* at 141. Globe was a Massachusetts-based company with "no business facilities, employees or bank account in Delaware." *Id.* However, Globe had hired a company to dispose of its waste, and Globe employees on two occasions "signed hazardous waste manifests stating that the waste was destined for . . . Delaware." *Id.* Globe moved to dismiss for lack of personal jurisdiction. *Id.* The defendants argued that jurisdiction was proper under 10 Del. C. § 3104(c)(1). *Id.* at 142.

In determining that Delaware's long-arm statute did not confer jurisdiction over Globe, the court cited *Fischer* and held:

> The language of [§ 3104(c)(1)] requires that *some action by the defendant occur within the [S]tate.* . . .
> Although [third-party] defendant Globe did contract . . . for the shipment [and disposal] of waste and knew the waste was destined for Delaware, Globe

---

[11] *See also Moore*, 513 F. Supp. at 1046 (holding that the mere shipment of a ladder into the State of Delaware was an insufficient basis for jurisdiction when the solicitation, filing of the purchase order, and payment for the ladder, occurred outside of Delaware).

*took no action within the [S]tate of Delaware.* Globe, therefore, is not subject to jurisdiction under subsection 3104(c)(1).[12]

*Consolidated Rail Corp.,* 674 F. Supp. at 142-43 (emphasis added) (citing *Fischer,* 549 F. Supp. at 391).

The cases upon which CIG relies in support of its jurisdictional argument are inapposite. For example, CIG cites *Sample v. Morgan,* 935 A.2d 1046 (Del. Ch. 2007), and asserts that the *Morgan* court "expressly held that [defendants'] filing of [an] amended certificate of incorporation in Delaware -- this single act -- conferred jurisdiction under § 3104(c)(1)." (D.I. 56 at 16) CIG maintains, therefore, that "[t]he purported signing and notarization of the Forged Power of Attorney in Delaware, bearing the Delaware Secretary of State's apostille seal . . . is a transaction which may support jurisdiction." (*Id.* at 14-15)

CIG misses the mark. *Morgan* involved a tangible transaction that actually occurred in Delaware, specifically, the filing of a certificate of incorporation. Moreover, the *Morgan* court explained that "the [defendants'] scheme not only involved *an act in Delaware,* it also involved *an injury in Delaware to [a] Delaware corporation." Morgan,* 935 A.2d at 1048 (emphasis added). In exercising jurisdiction over the defendants, the *Morgan* court held:

> When well-pled facts support the inference that a person caused a corporation to take jurisdictionally-significant conduct *in Delaware* and that conduct is an element in a scheme by corporate fiduciaries to unfairly advantage themselves *at the expense of a Delaware corporation* and its stockholders, our case law has consistently held that the long-arm statute may be used to serve that person.

---

[12] *See also Gibralt Capital Corp. v. Smith,* 2001 WL 647837, at *5 (Del. Ch. May 8, 2001) ("As was stated in *United States v. Consolidated Rail Corp.,* 'the language of § 3104(c)(1) requires that some action *by the defendant* occur within the state'. [sic] Here, it is not alleged that [the defendant] took action in Delaware, but only that [the defendant] caused another person to take action in Delaware. The only connection alleged between [the defendant] and Delaware is [defendant's] ownership of a controlling interest in [a Delaware corporation's] stock. . . . Although transactions between [the defendant] and [the Delaware corporation] did occur, none of those transactions are alleged to have taken place in Delaware. For that reason, I conclude that personal jurisdiction over [the defendant] cannot be predicated upon the Delaware long arm statute." (citation omitted)).

*Id.* at 1060 (emphasis added).[13] Unlike *Morgan*, the present matter involves no conduct that occurred in Delaware. Further, CIG is a Wyoming corporation, not a Delaware corporation, and it suffered no injury in Delaware. Therefore, *Morgan* is inapposite.[14]

Neither the plain language of § 3104(c)(1) nor relevant case authority supports the notion that an undisputedly forged document, originating outside of Delaware, represents an act or transaction within this State merely because it purports to have been notarized and sealed in Delaware.[15] There is no statutory basis for the exercise of personal jurisdiction in this instance.[16]

## B. Personal Jurisdiction Under the Conspiracy Theory of Jurisdiction

CIG's jurisdictional argument under the conspiracy theory of jurisdiction is unpersuasive

---

[13] Personal jurisdiction in *Morgan* also was appropriate in light of the fact that states have a legitimate and important interest in regulating the internal affairs of their corporations. *Morgan*, 935 A.2d at 1063. *See also Diedenhofen-Lennartz v. Diedenhofen*, 931 A.2d 439, 451 n.26 (Del. Ch. 2007) (citing numerous cases evidencing Delaware's "compelling interest in the efficient and consistent application of its laws governing business entities").

[14] CIG also cites *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 2005 WL 583828 (Del. Ch. Feb. 4, 2005) in support of its jurisdictional argument. (D.I. 56 at 14, 16) In *Benihana*, the court exercised personal jurisdiction over the defendant because the defendant filed *in Delaware* a certificate of designation in connection with a stock purchase agreement. *Benihana*, 2005 WL 583828, at *5, 8. *Benihana*, like *Morgan*, is inapposite because it involved a transaction that actually occurred in Delaware.

[15] Subsection (4) of § 3104(c), like subsection (1), does not confer jurisdiction over Ms. Korban. "While this section authorizes jurisdiction even when the tortious acts and the injury occurred outside the State of Delaware, the defendant must still be 'generally present' in the state." *Solae, LLC v. Hershey Can., Inc.*, 557 F. Supp. 2d 452, 460 (D. Del. 2008) (citation omitted)). "General presence" requires that the defendant "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State." 10 Del. C. § 3104(c)(4). However, forging a Delaware notarization and apostille seal outside of the State is not sufficient to establish "continuous and substantial" activity within Delaware to subject Ms. Korban to general jurisdiction.

[16] Because CIG fails to establish that this court has personal jurisdiction over Ms. Korban, "there is no need to continue to the Due Process prong of the jurisdictional inquiry." *Mimm*, 2012 WL 4963315, at *4. *See also Kloth v. Southern Christian Univ.*, 494 F. Supp. 2d 273, 281 n.8 (D. Del. 2007) (explaining that, where the court has no specific or general jurisdiction over a defendant, the action must be dismissed, and "[t]he court need not consider whether the exercise of personal jurisdiction would be consistent with . . . due process").

14

because CIG fails to satisfy the requirements of the applicable standard. In order to establish

jurisdiction under the conspiracy theory, CIG must show that:

> (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

*Istituto Bancario*, 449 A.2d at 225.

Here, CIG fails to demonstrate that "a substantial act or substantial effect in furtherance

of the conspiracy *occurred in the forum state*," (i.e., in Delaware).[17] *Id.* (emphasis added). Even

assuming Delaware law governs this case, (an issue that this Report and Recommendation does

not address),[18] CIG does not assert that the alleged forgery occurred in Delaware, nor does CIG

aver that it suffered injury in Delaware. The actual occurrence, as contrasted with the illusory

occurrence, in Delaware of a substantial act or effect in furtherance of the conspiracy, is required

in order to establish the conspiracy theory of jurisdiction.

For example, in *IOTEX Commc'ns., Inc. v. Defries*, 1998 WL 914265 (Del. Ch. Dec. 21,

1998), the Delaware Court of Chancery rejected the notion that a corporate director's breach of

fiduciary duties owed to a Delaware corporation could constitute a substantial act or effect under

the conspiracy theory of jurisdiction where the breach occurred outside of Delaware. The court

explained, plaintiff IOTEX's

---

[17] CIG's argument in support of the conspiracy theory of jurisdiction is based on the erroneous assumption that the alleged forgeries at issue represent an act that occurred in Delaware. However, "the conspiracy theory of jurisdiction is narrowly construed. 'Plaintiffs must assert specific factual evidence, not conclusory allegations, to show that the non-resident defendants were conspirators in some wrongful act *resulting in harm to Delaware entities or their owners* in order for the Court to exercise jurisdiction over them.'" *Benihana*, 2005 WL 583828, at *8 (emphasis added) (citations omitted).

[18] Ms. Korban disputes CIG's implied assertion that Delaware law governs this case. (D.I. 62 at 14-16)

> second and third arguments are that [the defendant's] alleged breach of his fiduciary duties as one of IOTEX's directors caused a "substantial effect" in Delaware simply by virtue of IOTEX's incorporation in this State and that [the co-defendant's] alleged breach of fiduciary while he was President of IOTEX's predecessor . . . caused injury in this State. Indeed, IOTEX goes so far as to describe [the co-defendant's] alleged breach of fiduciary (which is not alleged to have happened physically in Delaware) as an "additional act in Delaware that supports the assertion of jurisdiction here." These alleged "effects" add nothing to the analysis because they have only a metaphysical connection with this jurisdiction. In my judgment, as a general rule, in the case of Delaware corporations having no substantial physical presence in this State, an allegation that a civil conspiracy caused injury to the corporation by actions wholly outside this State[] will not satisfy the requirement found in the Supreme Court's opinion in *Istituto Bancario* of a "substantial effect . . . in the forum state."

*IOTEX Commc'ns.*, 1998 WL 914265, at *8 (emphasis added) (quoting *Istituto Bancario*, 449 A.2d at 225).

In the present case, the illusory act alleged by CIG establishes, at best, "only a metaphysical connection" between Ms. Korban and Delaware. *See id.* at *8. Consequently, CIG's conspiracy theory of jurisdiction argument must fail because CIG has not demonstrated that a substantial act or effect in furtherance of the alleged Korban Conspiracy occurred in Delaware.

## V.    CONCLUSION

For the foregoing reasons, I recommend that the court grant Ms. Korban's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1

16

(3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February 14, 2014

Sherry R. Fallon
United States Magistrate Judge

17